## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHELLE L. IRIZARRY              Case No. 1:13-cv-638
      Plaintiff,                         Dlott, J.
                                   Litkovitz, M.J.

      vs.

COMMISSIONER OF                **REPORT AND**
SOCIAL SECURITY,                **RECOMMENDATION**
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the

Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI on June 25, 2010, alleging

disability since September 1, 2009, due to migraine headaches, back injury and pain, arthritis,

neck pain, disc protrusions, swollen ankles, and hypertension. These applications were denied

initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de

novo hearing before administrative law judge (ALJ) Paul Yerian. Plaintiff and a vocational

expert (VE) appeared and testified at the ALJ hearing. On May 9, 2012, the ALJ issued a

decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] met the special earnings requirements of the Act on the alleged onset date and continues to meet those requirements through the date of this decision (Exhibit 4D).

2. The [plaintiff] has not engaged in substantial gainful activity since September 19, 2009, her alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: migraine headaches, degenerative disease of her cervical and lumbar spine, obesity, obstructive sleep apnea, bilateral carpal tunnel syndrome, a history of gout, and affective and anxiety-related disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following: (1) no more than occasional stooping, crawling or climbing of ladders, ropes or scaffolds; (2) no more than frequent crouching; and (3) no more than frequent fingering, handling, or feeling with her hands. From a mental standpoint, she must have no more than occasional contact with the others and less than occasional contact with the general public.

6. The [plaintiff] cannot perform her past relevant work[1] (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1978, is 34 years old, and has been defined as a younger individual at all times relevant to this decision (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 19, 2009, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 16-24).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]Plaintiff previously worked as a baker/donut maker, cook, line cook, and unlicensed nursing assistant.  (Tr. 58-59).
[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 60,000 unskilled, light jobs in the regional economy, such as housekeeper, packer and food preparer.  (Tr. 29, 71).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ  erred in rejecting the opinions of her treating sources; and (2) the ALJ erred in finding that plaintiff was not credible.   (Doc. 10).

1. Whether the ALJ erred by rejecting the opinions of plaintiff's treating sources.

For her first assignment of error, plaintiff argues that the ALJ erred by rejecting the opinion of her treating psychiatrist, Cynthia Richards, M.D., and relying instead on the opinions of the state agency reviewing psychologist, Aracelis Rivera, Psy. D, and consultative examining

5

psychologist, Michael Firmin, Ph.D, in assessing plaintiff's mental residual functional capacity

(RFC).   Plaintiff maintains that the ALJ should have given greater weight to Dr. Richards'

opinion in light of her ongoing treatment relationship with plaintiff.   Plaintiff further asserts that

the ALJ erred in relying on the opinions of Drs. Rivera and Firmin because they were based on

incomplete reviews of the record; notably, these doctors did not review Dr. Richards' opinion or

recent mental health treatment notes documenting significant findings.   (Doc. 10 at 10-14).

Regarding her physical limitations and RFC assessment, plaintiff contends the ALJ erred

by not crediting the opinion of her chiropractor, Randall Shaffer, D.C., that she was incapable of

performing any work on a fulltime basis.   Plaintiff asserts that Dr. Shaffer's opinions as to her

functional limitations are supported by objective evidence, his own clinical findings and those of

other examining physicians, and the medical record as a whole.   Plaintiff maintains that Dr.

Shaffer's opinion was therefore entitled to deference despite his status as a non-acceptable

medical source under the Social Security Regulations.   (Doc. 10 at 14-18).

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight.   "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once."   *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997).   *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference.").   "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

6

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

7

source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p). The procedural requirement of giving "good reasons" exists not only to enable claimants to understand the disposition of their cases, it also "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 375 (quoting *Wilson*, 378 F.3d at 544)). Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. *See also Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp. 2d 763, 782 (S.D. Ohio 2011).

a. *Plaintiff's Treating Psychiatrist: Dr. Richards*

Dr. Richards is plaintiff's treating psychiatrist at Solutions Community Counseling and Recovery Centers (Solutions), where plaintiff receives mental health care treatment. The record includes Dr. Richards' treatment notes from October 2011 to April 2012 (Tr. 690-737, 748-53) and a Mental Impairment Questionnaire completed by Dr. Richards on February 9, 2012. (Tr. 687-89).

Plaintiff began treatment at Solutions on October 6, 2011, at which time an Adult Diagnostic Assessment was completed. (Tr. 727-37). Plaintiff reported experiencing depression as characterized by "not wanting to get out of bed [and] not wanting to be around anyone. . . ." (Tr. 727). She further reported experiencing anxiety when around others and not at home. (*Id.*). Plaintiff stated her depression and anxiety began during a prior relationship where her partner was abusive. (*Id.*). The counselor at Solutions diagnosed plaintiff with

post-traumatic stress disorder (PTSD) and assigned her a Global Assessment of Functioning

(GAF) score of 53.[3]   (Tr. 735).

Plaintiff first treated with Dr. Richards on October 27, 2011, when she underwent a

complete psychiatric evaluation.   (Tr. 699-723).   Plaintiff reported depression with anhedonia;

energy, appetite, and weight changes; social withdrawal; irritability; attention and concentration

difficulties characterized by losing things, being disorganized, and not completing or

remembering tasks; anger; and anxiety with panic attacks.   (Tr. 702).   Plaintiff also reported

suicidal ideation but denied a plan or intent.   (Tr. 721).   Dr. Richards observed that plaintiff's

eye contact, responsiveness, engagement, speech, communication, and cooperation were within

normal limits.   (Tr. 715).   Dr. Richards noted that plaintiff's narration was organized and

coherent; the quantity, quality, relevance, and clarity of her conversation were within normal

limits; and plaintiff's attention and thought processes were within normal limits.   (Tr. 717, 721).

Plaintiff appeared alert with clear sensorium and was oriented x3.   (Tr. 719).   Plaintiff

presented with a labile affect and irritable, depressed, and anxious mood.   (Tr. 720).   Her

hygiene was "so so."   (Tr. 714).   She expressed suicidal ideation without plan or intent, and she

reported visual hallucinations.   (Tr. 721).   Dr. Richards reported that plaintiff acknowledged her

problems and recognized a need for treatment.   (Tr. 722).   Dr. Richards diagnosed plaintiff with

bipolar disorder and PTSD and assigned her a GAF score of 40.   (Tr. 699).

---

[3]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).   The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."   *Id.*   The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).   *Id.* at 34.   Individuals with scores of 61-70 are classified as having "mild" symptoms; people with scores of 51-60 are classified as having "moderate" symptoms; those with scores of 41-50 are classified as having "serious" symptoms; and individuals with scores of 31-40 are classified as having "major" impairment in several areas, such as work, family relations, thinking, or mood.   *Id.* at 32.

9

Plaintiff treated with Dr. Richards for follow-up on December 29, 2011, and February 9, 2012.  (Tr. 690-98).  In December 2011, plaintiff reported episodes of anxiety and violent outbursts.  This progress note contains no mental status examination.  Plaintiff's medications included Abilify, Klonopin, Doxepin Hydrochloride, and Clonidine.  (Tr. 693-95).  On February 9, 2012, plaintiff reported side effects from her medication, including increased anger. (Tr. 690).  Dr. Richards observed that plaintiff had a good understanding of her medical problems; logical and coherent thought processes; no delusions or other thought content issues; a full affect and neutral mood; good cognition; and insight and judgment that were not grossly impaired.  (*Id.*).  Her medications were continued.  (Tr. 691).

After treating plaintiff on these three occasions, Dr. Richards completed a Mental Impairment Questionnaire.  (Tr. 687-89).  Dr. Richards opined that plaintiff's current GAF was 35, with the highest in the past year being 40.  (Tr. 687).  Dr. Richards further opined that plaintiff had extreme functional limitations in activities of daily living; maintaining social functioning; and concentration, persistence or pace.  (Tr. 689).  Dr. Richards also reported that plaintiff had extreme episodes of deterioration or decompensation in work.  (*Id.*).  Dr. Richards opined that plaintiff's prognosis was "poor" and that plaintiff's impairments would cause her to miss work more than three times a month.  (Tr. 688-89).  When asked to describe the clinical findings demonstrating the severity of plaintiff's impairments, Dr. Richards wrote "see records." (Tr. 688).

The record also includes treatment notes from two follow-up visits with Dr. Richards which post-date the above opinion.  On March 15, 2012, plaintiff reported feeling better and less depressed, though she was still easily frustrated and volatile.  (Tr. 751).  Dr. Richards reported

10

that plaintiff had logical and coherent thought processes; a full affect; a decreased but improved mood; good cognition but with some memory and concentration problems; and likely insight and judgment impairments due to mood volatility. (*Id.*). On April 30, 2012, plaintiff reported that she was thinking "clearer" as her sleep apnea was being treated. (Tr. 748). Plaintiff further reported that she was working at a homeless shelter, but "having a lot of trouble working." (*Id.*). Dr. Richards observed that plaintiff's thought process, thought content, perception, cognition, insight, and judgment was within normal limits, and her affect was full and mood neutral. (*Id.*).

Consultative examining psychologist Michael W. Firmin, Ph.D, evaluated plaintiff on March 3, 2011, for disability purposes. (Tr. 562-68). Dr. Firmin observed that plaintiff's thought processes were pessimistic and that she appeared sad, though eye contact was appropriate; plaintiff was tearful and she reported depression with symptoms including poor concentration, difficulty sleeping, and feelings of hopelessness. (Tr. 564). Testing revealed that plaintiff's intellectual ability was in the average range and her insight and judgment appeared coherent and focused. (Tr. 565). Dr. Firmin diagnosed plaintiff with depressive disorder not otherwise specified and assigned her a GAF of 65, indicating mild symptoms. (Tr. 566). Dr. Firmin further opined that plaintiff had moderate impairment in relating to others, including fellow workers and supervisors; no impairment in understanding, remembering, and following instructions for simple tasks; mild impairment in maintaining attention, concentration, persistence and pace to perform routine tasks; and mild impairment in her ability to withstand the stress and pressures of day-to-day work activity. (Tr. 566-67). Dr. Firmin's opinion was based on plaintiff's reports that she did not engage in or enjoy regular social activities, was occasionally sidetracked, and relied on others to keep track of finances and household duties, but was able to

11

complete paperwork, return phone calls, navigate an automated answering service, make shopping lists, look up professionals in the phone book, and replace batteries in home appliances as necessary. (*Id.*).

State agency reviewing psychologist Aracelis Rivera, Psy.D., reviewed the record in March 2011. Notably, Dr. Rivera's opinion was rendered before plaintiff began treatment at Solutions and was therefore based primarily on her review of Dr. Firmin's evaluation. (Tr. 84-94). Based on plaintiff's reports that she shops, attends medical appointments, sustains a relationship with her boyfriend and children, and becomes easily angered, Dr. Rivera opined that plaintiff could engage in superficial interactions and was moderately limited in her abilities to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers. (Tr. 93). Dr. Rivera determined that plaintiff had no significant limitations in sustaining concentration or persistence. (Tr. 92-93). Dr. Rivera further determined that plaintiff had some adaptation limitations, but they were not significant. (Tr. 93-94). Dr. Rivera concluded that plaintiff had mild restrictions in activities of daily living; moderate difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 89).

The ALJ determined that Dr. Rivera and Dr. Firmin's assessments were consistent with the nature of plaintiff's impairments and a preponderance of the medical findings and observations of record. (Tr. 18-19, 21). Based on these opinions, the ALJ found that plaintiff "should have no more than brief and superficial interactions with the general public, as more frequent and intense interaction would likely aggravate her mental symptomatology." (Tr. 21). The ALJ rejected Dr. Richards' findings that plaintiff had extreme functional limitations

12

because: (1) Dr. Richards' treatment notes did not consistently document her observations of the symptoms she cited as support for her conclusions; (2) her opinion was inconsistent with other evidence of record, including plaintiff's self-reports and Dr. Firmin's psychological evaluation; and (3) her opinion was primarily based on plaintiff's self-reports, which were deemed less than credible. (Tr. 21-22).

The ALJ's decision is substantially supported by the record. At the outset, the Court notes that Dr. Richards rendered her opinion after treating plaintiff only three times. While plaintiff asserts that Dr. Richards's opinion was entitled to greater weight given her status as plaintiff's treating psychiatrist, *see* Doc. 10 at 11-12, the Commissioner contends the ALJ never determined that Dr. Richards was a treating source at the time she rendered her opinion. (Doc. 15 at 6). The Court need not resolve this issue because even if Dr. Richards is considered a treating source, the ALJ gave good reasons for not adopting Dr. Richards' extreme mental work-related limitations.

As the ALJ determined, Dr. Richards' opinion was not well-supported by her treatment notes. For example, while Dr. Richards opined that plaintiff suffers from extreme deficiencies in social interaction and concentration, persistence or pace (Tr. 689), Dr. Richards' pre-opinion progress notes do not document observations that would support such severe limitations. *See, e.g.*, Tr. 715-19 (Dr. Richards' intake psychiatric evaluation includes her clinical observations that plaintiff had normal language and communication skills and was cooperative during the evaluation; plaintiff communicated in organized, coherent sentences and the quantity, quality, relevance, and clarity of her conversation was within normal limits; her attention was within normal limits; plaintiff was fully oriented and alert with clear sensorium; and her thought

13

production and form was logical and coherent); Tr. 690 (February 9, 2012 treatment notes

document that plaintiff engaged easily and had a good understanding of her complex medical

problems; she had logical, coherent thought processes and content; good cognition; full affect

and neutral mood; and exhibited normal behavior).   Similarly, the limited post-opinion treatment

notes do not support Dr. Richards' finding that plaintiff suffers from extreme limitations in social

interaction or in maintaining concentration, persistence, or pace.  *See* Tr. 751 (March 15, 2012

treatment notes document that plaintiff's thought processes were logical, coherent, and within

normal limits; plaintiff had a full affect and decreased but improved mood, though she reported

being exhausted all the time; plaintiff's cognition was good though she reported memory and

concentration problems related to sleep deprivation; and plaintiff reported feeling less depressed

and better on Vitamin D); Tr. 748 (April 30, 2012 treatment notes document that plaintiff's

thought processes and content and perception were within normal limits; her affect was full and

mood neutral; she denied suicidal or homicidal ideation; her cognition, insight, and judgment

were within normal limits).   Given the disparity between the limitations assigned by Dr.

Richards and her documented observations of plaintiff as reflected in the treatment records, it

was reasonable for the ALJ to discount the weight given to her opinion.  *See* 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).

The ALJ's decision is further supported in light of the inconsistency between Dr.

Richards' opinion and other evidence of record.   For example, the ALJ found that during

plaintiff's October 26, 2011 Adult Diagnostic Assessment, plaintiff reported she "gets along with

people easily" and had no limitations of activities of daily living.  (Tr. 21, citing Tr. 728).   This

evidence is inconsistent with Dr. Richards' opinion that plaintiff had extreme restrictions in

activities of daily living and in maintaining social functioning. The ALJ also cited to the

findings of consultative examining psychologist Dr. Firmin, who reported that plaintiff was able

to "recall a verbal list of 5 out of 6 words presented to her. Around 15 minutes later she was

able to recall 3 of them"; plaintiff also "recalled correctly 8 digits forward and 6 digits

backward"; and "correctly completed 14 serial-seven items (out of 14) from (100)" though she

used her fingers for counting. (Tr. 21, citing Tr. 565). This evidence lends further support to

the ALJ's conclusion that Dr. Richards' extreme functionally limitations are inconsistent with the

record evidence as a whole.

Finally, the ALJ was not required to afford more weight to Dr. Richards' opinion given

the lack of clinical evidence supporting her conclusions. Aside from plaintiff's subjective

reports, which the ALJ found less than fully credible, there is little medical evidence supporting

Dr. Richards' conclusions of extreme limitations. *See* 20 C.F.R. §§ 404.1508, 416.908

(impairment must be established by medical evidence consisting of signs, symptoms and

laboratory findings, and not solely by claimant's statement of symptoms). *See also Buxton v.*

*Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of

doctors, particularly where they are unsupported by detailed objective criteria and

documentation.") (internal citations and quotations omitted). The Court acknowledges that

given the nature of mental impairments, mental health practitioners must often rely on less

tangible evidence than the tests utilized by other physicians to diagnose their patients. *See*

*Blankenship v. Bowen*, 874 F.2d 116, 1121 (6th Cir. 1989). However, the ALJ is not required to

accept opinions from psychiatrists who rely solely on a plaintiff's subjective complaints. *See*

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 2010 WL 5185848, at *2-5 (6th Cir. 2010)

15

(holding that ALJ's decision to reject the opinion of a treating psychiatrist was substantially

supported where it was based on "[claimant's] self-reported history and subjective complaints

[and was] not supported by objective medical evidence. . . ."). As stated above, Dr. Richards'

opinion is not well-supported by her observations of plaintiff as documented in the treatment

notes and there is other substantial evidence of record that is inconsistent with her conclusions.

Given the lack of medical evidence supporting Dr. Richards' opinion, the ALJ's decision to

reject her extreme findings is substantially supported by the evidence of record.

Insofar as plaintiff argues that the ALJ substituted his own opinion for that of Dr.

Richards simply because there was no medical source opinion generated after Dr. Richards'

opinion, this argument is not well-taken. Plaintiff cites to no authority, nor is the Court aware of

any, providing that the latest-in-time medical opinion controls. As stated above, the ALJ gave

good reasons for discounting Dr. Richards' opinion because it was inconsistent with other record

evidence and unsupported by her own treatment notes. The undersigned declines to adopt

plaintiff's proposed last-in-time rule where the ALJ's rationale for rejecting a medical opinion is

supported by substantial evidence. For these reasons, the ALJ's decision to discount Dr.

Richards' opinion is supported by substantial evidence and his finding should be affirmed.

    b. *Plaintiff's Treating Chiropractor: Dr. Shaffer*

Dr. Shaffer treated plaintiff from August 24, 2010 to December 12, 2011. (Tr. 557-58,

670-71). Dr. Shaffer's treatment records consistent of four pages of typewritten summaries of

plaintiff's treatment on 14 occasions. (*Id.*). On August 24, 2010, plaintiff presented with the

following: decreased lumbar range of motion; positive straight leg raise on the right; positive

Braggard's test on the right; normal lower extremity reflexes; normal lower extremity muscle

16

strength; no sensory deficits; palpable tenderness and muscle spasm L4-5 bilaterally, worse on the right; and multiple areas of intersegmental fixation (hypomobility) of the lower thoracic and lumbar spines and right sacroiliac joint as determined by motion palpation. (Tr. 557). Plaintiff was diagnosed with thoracic, lumbar, and right sacroiliac joint dysfunction. (*Id.*). On August 27 and September 3, 2010, examination findings were consistent with improved residuals. (*Id.*). Further clinical findings included: facet fixation and tenderness and muscle spasm at L5 right (September 13, 2010); tenderness and moderate muscle spasm at L3-5 bilaterally and multiple areas of intersegmental fixation (hypomobility) of the lumbar spine as determined by motion palpation (December 21, 2010); palpable tenderness and moderate to severe muscle spasm at L3-5 bilaterally (February 8, 2011); positive straight leg raise test, positive Braggard's test on the right, and significantly reduced lumbar range of motion (May 4, 2011); slight forward antalgia and guarded gait due to pain, palpable tenderness and moderate to severe muscle spasm at L1-S1, and multiple areas of intersegmental fixation (hypomobility) of the lumbar spine as determined by motion palpation (August 18, 2011); and palpable tenderness and moderate to severe muscle spasm at L1-S1, and multiple areas of intersegmental fixation (hypomobility) of the lumbar spine as determined by motion palpation (November 7, 2011). (Tr. 557-58, 670-71).

The record includes several opinions from Dr. Shaffer. On December 2, 2010, Dr. Shaffer completed a Medical Questionnaire at the request of the Social Security Administration. (Tr. 553-55). When asked to describe any sensory deficit, muscle weakness, reflex abnormalities, muscle spasms or atrophy or symptoms of radiculopathy, Dr. Shaffer responded: "NONE." (Tr. 554). Dr. Shaffer opined that plaintiff had a normal gait and normal abilities to do fine and gross manipulation. (*Id.*). Dr. Shaffer reported that plaintiff had limited motion in

her joints and/or spine, but referred to his notes when asked to specify the range of motion in

degrees.  (*Id.*).

In November 2011, Dr. Shaffer completed a form for the Ohio Department of Job and

Family Services regarding plaintiff's ability to engage in work activities.  (Tr. 738).  Dr. Shaffer

opined that plaintiff was able to stand or walk for two-and-a-half hours and sit for two-and-a-half

to four hours a day; alternate between sitting or standing four-and-a-half to six hours a day;

engage in simple grasping, pushing and pulling, and fine manipulation; and reach above shoulder

level.  (*Id.*).  Dr. Shaffer further opined that plaintiff could occasionally lift up to 10 pounds, but

never more, and she could occasionally bend, squat, crawl, and climb.  (*Id.*).  Dr. Shaffer

reported that plaintiff could not use her feet for repetitive movements and he did not release her

for work; he noted that her restrictions applied until May 7, 2012, and that she had an MRI

scheduled for May 2012.  (*Id.*).  A Strength Assessment form completed by Dr. Shaffer includes

his opinion that plaintiff could sit for 15 to 20 hours per week (or two and one-half to four hours

per day) and stand for 10 to 15 hours per week (or two to two-and-one-half hours per day); that

she had "extreme" limitations in her ability to do light lifting of 25 pounds or less; and that these

limitations would last at least twelve months.  (Tr. 739-40).

On January 9, 2012, Dr. Shaffer completed a Medical Assessment of Ability to Do

Work-Related Activities.  (Tr. 682-86).  Dr. Shaffer opined that plaintiff had chronic severe low

back pain and a L4-5 disc protrusion that affected her ability to lift, carry, stand, walk, sit, engage

in postural activities, and push or pull.  (*Id.*).  Dr. Shaffer assessed that plaintiff could lift less

than five pounds occasionally and could lift no weight frequently.  (Tr. 683).  Dr. Shaffer

further assessed that plaintiff could stand and walk two-and-one-half hours per day and sit four

18

hours per day, one hour at a time without interruption. (*Id.*). Plaintiff could never climb, balance, stoop, crouch, kneel, crawl, push, or pull. (Tr. 684-85). Dr. Shaffer opined that due to low back and leg pain and weakness, plaintiff should avoid heights and heavy machinery. (Tr. 685). Dr. Shaffer further opined that plaintiff was incapable of both sedentary and light work.[4] (Tr. 686).

The ALJ acknowledged Dr. Shaffer's assessment that plaintiff was limited to "a substantially reduced range of sedentary work incompatible with sustained fulltime competitive work activity." (Tr. 20). The ALJ noted, however, that as a chiropractor, Dr. Shaffer's opinions are not acceptable sources of medical evidence under Social Security Regulations and, consequently, they do not have the same probative value as opinions from acceptable medical sources such as licensed physicians and osteopaths. (Tr. 20-21). The ALJ determined that Dr. Shaffer's opinions generally limiting plaintiff to sedentary activities were consistent with the ALJ's RFC assessment, but the objective findings and treatment of record did not support his conclusions that plaintiff was incapable of sustaining full-time sedentary work. (Tr. 21).

---

[4]Social Security Regulations define sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles. . . . Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). Light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b)

The ALJ's decision to not accept the functional limitations put forth by Dr. Shaffer is supported by substantial evidence. The objective evidence of record establishes a basis for plaintiff's back and neck pain. *See* Tr. 555 (a September 2010 MRI of plaintiff's lumbar spine reflects that plaintiff had mild decreased disc signal at L4-L5, consistent with desiccation; conus terminates at the L1-L2 level; mild facet and ligamentous at L2-L3 and L3-L4; small protrusion at L4-L5; and no nerve root contact – moderate to severe foraminal narrowing); Tr. 577-78 (a November 2007 x-ray of plaintiff's lumbar and cervical spine revealed mild anterior compression deformity of the T12 vertebral body with 10% loss of the vertebral body height and straightening of the usual cervical lordosis, with no definite fracture). However, aside from the findings of tenderness and spasm noted by Dr. Shaffer, the examination evidence of record largely reflects normal physical findings.

As the ALJ noted, Nadeem M. Ahmed, M.D., a pain management specialist, examined plaintiff on October 8, 2010, at the request of, *inter alia*, Dr. Shaffer and found that plaintiff had normal neurological findings with no significant motor or reflex deficits and was not a candidate for surgery. (Tr. 21, citing Tr. 611-12). Dr. Ahmed noted that plaintiff was able to toe-heel stand without difficulty. Examination also revealed that plaintiff had a slightly antalgic gait; no upper extremity deficits; 5/5 strength in her lower extremities; altered sensation to pinprick and soft touch in L4-5, S1 distribution bilaterally; normal straight leg raise; restricted flexion and extension in her back and spine; and some midline and facet tenderness. (Tr. 611-12). The ALJ also cited to normal physical examination findings from January, June, and September 2011, which he found were inconsistent with Dr. Shaffer's assessments. (*Id.*). *See* Tr. 616 (on January 20, 2011, physical examination findings revealed that plaintiff ambulated normally; she

20

had normal gait and station; and no musculoskeletal abnormalities were noted aside from a mild pitting edema); Tr. 659 (on June 7, 2011, plaintiff's physical exam was normal aside from a +1 pitting edema in her lower extremity; she had a full range of motion in her back and spine; and her neck was supple); Tr. 654 (a September 29, 2011 examination was normal: she had a supple neck, no tenderness in her extremities, 5/5 strength throughout, and a normal gait).

In addition, other evidence of record substantially supports the ALJ's finding to discount Dr. Shaffer's opinions. *See, e.g.*, Tr. 543-45 (in June 2010, plaintiff's primary care physician Robert L. Brandt, M.D., found tight muscles but no other neck problems were noted; no musculoskeletal issues were noted aside from edema; and gait, station, and reflexes were normal); Tr. 607-08 (plaintiff was treated at urgent care in August 2010 following pain after a chiropractic adjustment and she had some diminished range of motion but was advised to treat her pain with "RICE" (rest, ice, compression, elevation)); Tr. 614-47 (treatment records from Sarah Khavari, M.D., reflect that plaintiff occasionally had some tenderness and limited range of motion in her back and neck spasm, but she had normal muscle strength, full range of motion in her lower extremities, normal gait, and negative straight leg raise); Tr. 648-52 (on May 27, 2011, plaintiff was treated for a migraine at the emergency room and physical examination revealed full muscle strength in all extremities and her "overall exam [was] completely normal"); Tr. 653-69 (treatment notes from Family Health Center show plaintiff had a full range of motion in her back in June 2011 and a normal exam in September 2011).

The ALJ also reasonably determined that Dr. Shaffer's suggested limitations on sitting, standing, and walking were inconsistent with plaintiff's activities of daily living. (Tr. 21). For example, the ALJ cited to a February 2011 Function Report wherein plaintiff reported that she

takes care of pets with help from her children and does light cleaning and laundry for three to four hours twice a week, but gets help lifting the laundry.  *See* Tr. 229-32.  The ALJ also noted that plaintiff testified at the hearing that she had recently applied for work and would have accepted the job if offered.  *See* Tr. 39-40.  In consideration of the above evidence, it was reasonable for the ALJ to not credit Dr. Shaffer's opinions that plaintiff was incapable of sedentary work due to her back impairment.

Notably, the ALJ was not required to give any special weight to Dr. Shaffer's opinions because chiropractors are not acceptable medical sources qualified to assess the severity of plaintiff's impairments and functioning.  *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists) *with* 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources").  *See also Walters*, 127 F.3d at 530 (ALJs have discretion in determining how much weight to give chiropractor opinions based on the record as a whole as chiropractors are not acceptable medical sources).  Here, the ALJ reasonably exercised his discretion in determining that the restrictions found by plaintiff's treating chiropractor were inconsistent with the record as a whole.  The ALJ's determination is substantially supported by the record evidence discussed above; the opinions of the state agency reviewing physicians; and plaintiff's testimony and reports regarding her activities of daily living.  Accordingly, the ALJ did not err in rejecting Dr. Shaffer's finding that plaintiff was incapable of sedentary work.

Lastly, plaintiff asserts the ALJ erred in finding that she retained the RFC to do a reduced range of sedentary work because there is no supporting medical opinion of record.  (Doc. 10 at 18).  It is true that there is no medical opinion precisely fitting the ALJ's RFC finding.  Dr. Shaffer was of the opinion that plaintiff was incapable of performing even a sedentary level of work (Tr. 682-86), and the state agency reviewing physician, Eli Perencevich, D.O., opined that plaintiff was capable of performing a range of medium exertional work.  (Tr. 78-79).  Plaintiff appears to argue that the ALJ improperly "split the difference" between these opinions in formulating her RFC and, thus, committed reversible error.   The Court disagrees.

As stated above, the ALJ did not fully accept Dr. Shaffer's opinions because his opinions were inconsistent with the objective and clinical record evidence and he is not an acceptable medical source.   The ALJ did, however, find that "Dr. Shaffer's suggestion that [plaintiff] is limited to sedentary activities in general" was consistent with the RFC formulation for a limited range of sedentary work.   The ALJ simply disagreed with Dr. Shaffer's conclusion that plaintiff could not sustain fulltime sedentary work.  (Tr. 21).   The ALJ's discussion of Dr. Shaffer's conclusions demonstrates that he formulated plaintiff's RFC by adopting the portions of his medical opinions which he deemed reasonable in light of the medical evidence of record. Because the ALJ explained his rationale for finding that plaintiff was capable of sedentary work with additional limitations and reasonably relied on portions of Dr. Shaffer's opinions, his RFC formulation is supported by substantial evidence.

For these reasons, plaintiff's first assignment of error should be overruled.

2.  Whether the ALJ's credibility determination is substantially supported.

For her second assignment of error, plaintiff argues that the ALJ erred by finding that her

23

reports of disabling pain were not entirely credible.   Plaintiff claims that the ALJ

mischaracterized the evidence regarding her activities of daily living in making his credibility

determination.   Plaintiff argues that even if she engaged in the activities identified by the ALJ,

this does not support the ALJ's finding that her reports of disabling pain were not fully credible

or that she is able to perform work activity on a regular basis.   (Doc. 10 at 18-20).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant.   *Rogers*, 486 F.3d at 247 (citations omitted).   In light

of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's

credibility finding is entitled to deference and should not be discarded lightly.   *Buxton v. Halter,*

246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec'y of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981).

"If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing

so."   *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).   The ALJ's articulation of reasons

for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for

meaningful appellate review."   *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)

(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible

or intuitive notion about an individual's credibility."   *Rogers,* 486 F.3d at 247.   Rather, such

determination must find support in the record.   *Id.*   Whenever a claimant's complaints regarding

symptoms or their intensity and persistence are not supported by objective medical evidence, the

ALJ must make a determination of the credibility of the claimant in connection with his or her

complaints "based on a consideration of the entire case record."   *Id.*   Consistency between a

claimant's symptom complaints and the other evidence in the record tends to support the

credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id.*

Here, the ALJ determined that plaintiff's statements were not entirely credible based on: (1) inconsistencies between her reported functional abilities and the clinical evidence of record; (2) her filing of a false police report; (3) her activities of daily living; and (4) plaintiff's presentation at the ALJ hearing.  (Tr. 22).  The ALJ noted that while plaintiff reported being able to lift only five pounds, stand for only 20 minutes and sit for only 30 minutes at a time, physical examination findings consistently established that she had full muscle strength in all extremities.  Further, plaintiff's reported sitting and standing capabilities are far less than those put forth by Dr. Shaffer.  These inconsistencies substantially support the ALJ's decision to discount plaintiff's credibility.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citing *Blacha v. Sec'y of H.H.S.*, 927 F.2d 228, 231 (6th Cir. 1990) (noting that inconsistencies between a plaintiff's reports and medical evidence is a valid basis for discounting credibility)).

Plaintiff's prior filing of a false police report further supports the ALJ's decision to discount her credibility.  The record demonstrates that plaintiff spent three days in jail in 2006 for filing a false police report.  (Tr. 563).  The ALJ was entitled to consider plaintiff's history of providing false information to governmental agencies in assessing her credibility.

Further, the ALJ's finding that plaintiff's activities of daily living are inconsistent with her reports of disabling pain is substantially supported by the record evidence.  Plaintiff reported that she was able to do light house work for three to four hours at a time.  (Tr. 229-32).  This level of activity is inconsistent with her other reports that she is unable to walk for more than 20

25

to 30 feet without resting and pay attention for more than five to ten minutes at a time. (Tr. 234). Moreover, as stated above, plaintiff testified that she would have accepted full-time employment after filing her disability application (Tr. 39-40); plaintiff's willingness to work full-time contradicts her reports of being unable to do so.

Finally, the ALJ discounted plaintiff's credibility because she appeared to exaggerate at the ALJ hearing and noted that "she was able to attend the hearing proceeding closely and fully, and respond to questions in an appropriate manner." (Tr. 22). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). As the ALJ's stated rationale for discounting plaintiff's credibility is otherwise supported by substantial evidence and in deference to the ALJ's personal observations, the undersigned finds that it was reasonable for the ALJ to take plaintiff's presentation at the ALJ hearing into account in assessing her credibility.

For the above reasons, plaintiff's second assignment of error should be overruled.


**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.


Date: 10/20/14

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHELLE L. IZIRARRY,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-638

Dlott, J.

Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

27